IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

JASON S.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

Case No. 1:18-cv-01369-JES-JEH

### Report and Recommendation

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 12), the Commissioner's Motion for Summary Affirmance (Doc. 15), and the Plaintiff's Reply (Doc. 17). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Jason S. filed his application for disability insurance benefits (DIB) on October 30, 2014 and alleged disability beginning on October 6, 2014. His claim was denied originally on March 2, 2015 and upon reconsideration on September 9, 2015. Jason filed a request for hearing concerning his application for DIB on September 24, 2015, and a hearing was held before the Honorable Kathleen Winters (ALJ) on April 11, 2017. At that hearing, Jason was represented by an

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 8) on the docket.

attorney, and he and a Vocational Expert (VE) testified. Following the hearing, Jason's claim was denied on August 16, 2017. His request for review by the Appeals Council was denied on August 6, 2018, making the ALJ's Decision the final decision of the Commissioner. Jason filed the instant civil action seeking review of the ALJ's Decision on October 9, 2018.

## II

At the time of the hearing, Jason was 41 years old and lived alone in a house in Ellsworth, Illinois. In his November 6, 2014 Disability Report – Adult – Form SSA-3368, Jason claimed his ability to work was limited by: degenerative arthritis of the spine; bone spurs; node in upper back; "low back in to [sic] far"; and "right hand tingles and finger turn [sic] white when cool." AR 205.

Jason testified that he previously worked as a union carpenter "basically" his "entire life." AR 54. Jason testified at length to his back impairments and his efforts to treat those impairments. He stated he usually started the day "profusely" sweating from pain. AR 65. The ALJ then turned to Jason's mental health issues, pointed out that Jason was prescribed medication, that he mentioned he was seeing a therapist, and that he was referred for a psychological evaluation. Jason confirmed he continued to take Citalopram, an anti-depressant, which was prescribed by his primary care physician. When asked whether he ever had any inpatient treatment or hospitalization for his mental health issues, Jason answered that "the crisis team" talked to him toward the end of January or first of February 2017, as his primary care physician could tell Jason was in "profuse" pain and had thoughts "of just ending it if this [was] how [it was] going to be." AR 79.

Jason also testified to speaking with a psychologist "probably" six months before the April 2017 hearing, and he took a 212-question test for opioid-based pain management (which he passed). AR 80. When asked whether that psychologist visit was separate individual therapy or part of Jason's pain

2

management, Jason answered that he thought it was "just something every pain center just has, you have to do that now in order to be – you know, so they don't get in trouble if they give you pain meds anymore." AR 81. Upon questioning by his attorney, Jason testified that he could not stay focused to do anything.

The VE was then questioned. The ALJ presented the VE with a hypothetical individual:

> of the claimant's age, education, and with the past job that we just discussed [carpenter]. Further assume that this individual is able to work at the light exertional level, can frequently climb stairs and ramps, but never climb ladders, ropes, or scaffolds, must avoid concentrated exposure to extreme cold, fumes, dust, odors, gasses, and pulmonary irritants, with work that can be learned in 30 days or less with simple routine tasks. Could such a hypothetical individual perform any of the claimant's past work?

AR 87. The VE answered in the negative. The VE then identified jobs such a hypothetical individual could perform. The VE answered that a sit or stand option while the individual remained on task would require jobs classified as sedentary. He proceeded to identify sedentary jobs "based on the unskilled simple routine" limitation in the first hypothetical. AR 89. As for off-task behavior, the VE testified that there was an expectation of "no more than ten percent off of [] production," and "more than 20 percent off on actual time" would preclude employability. AR 90. No more than two days of absence per month would be tolerated in the work place. If a person needed additional breaks on a consistent basis beyond the normally scheduled breaks, the VE explained that would "pretty much rule out employment." AR 91.

### III

In her Decision, at Step Two, the ALJ determined Jason had the following severe impairments: status post-surgical spine fusion from T3 to L2; low-grade degenerative changes in the lower lumbar spine; asthma; anxiety; and depression.

3

AR 27. At Step Three, the ALJ determined Jason did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. The ALJ stated Jason alleged disability due to back problems when he applied for disability. The ALJ pointed to Jason's January 2015 report wherein Jason provided: he lived alone and was able to attend to his own needs; left his residence nearly daily; paid his own bills and handled his own financial affairs; visited with friends; and had no great difficulty finishing what he started, following instructions, cooperating with authority figures, handling stress, and handling changes in routine. The ALJ continued to discuss the evidence pertaining to Jason's back pain, including that Jason underwent a spinal fusion surgery from level T3 to L2 in July 2015. As for Jason's mental impairments, the ALJ noted that Jason "now alleges that he is disabled, in part, due to mental problems, specifically depression and anxiety." AR 30.

In that regard, the ALJ highlighted that Jason reported he did not require medication to treat a mental illness when he applied for disability benefits, did not complain of symptoms of anxiety or other mental disorders when seen in October 2014 but was diagnosed with anxiety then, he reported some sense of depression and asked for medication to treat that problem in April 2015, his primary care physician did not recommend mental health counseling, therapy, or other type of mental health treatment at that time, and Jason continued to be followed by local mental health counselors. The ALJ concluded the severity of Jason's mental impairments did not meet or medically equal the criteria of the relevant listings, and explained in making that finding, she considered the "paragraph B" criteria of those listings which required a determination as to the degree of limitation Jason had in each of the four broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. The ALJ found no limitation

in all except the area of concentration, persistence, or pace. In that area, the ALJ determined Jason had moderate limitation.

> The ALJ made the following residual functional capacity (RFC) finding:
>
> [C]laimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except he is limited to frequent climbing stairs and ramps; but never climbing ladders, ropes, or scaffolding. He must avoid concentrate [sic] exposure to extreme cold, fumes, dusts, odors, gases, and pulmonary irritants. He requires an option to sit or stand while remaining on task, and at the workstation; and with work that can be learned in 30 days or less, with simple and routine tasks.

AR 31. In support of that RFC finding, the ALJ discussed the medical evidence pertaining to Jason's back impairments, his daily activities, his "less than honest" actions pertaining to pain treatment and his resulting discharge from treatment at a pain center, and the State Agency physicians' assessment of Jason in February and September 2015 (to which she gave "limited probative value"). AR 32-33. The ALJ explained that Jason's physical impairments, primarily his spinal column problems, prevented him from performing strenuous activity, thus he was limited to lift and carry frequently smaller and lighter items. Those impairments also limited his ability to walk and stand, but there was no evidence to suggest he was not able to walk and stand for up to two hours out of an eight-hour work day. His spinal column problems limited his ability to work on ladders, ropes, scaffolds, stairs, and ramps. He required the option to sit or stand while remaining on task and at the workstation. His asthma required he avoid certain environments with respiratory irritants. His depression and anxiety limited his ability to perform complex and highly intellectual work such that he was limited to jobs where tasks could be learned in 30 days or less and to jobs with simple, routine tasks.

5

## IV

Jason argues the ALJ erred: in assessing Jason's mental RFC; in assessing his physical RFC; and in evaluating his subjective allegations that addressed the intensity, persistence, and limiting effects of his pain and symptoms.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be

a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Jason claims error on the ALJ's part at Step Four. A claimant's RFC "is the most he can still do despite his limitations." 20 C.F.R. § 404.1545(a)(1).

### A

### 1

Jason argues that the ALJ erroneously failed to include Jason's moderate restrictions in concentration, persistence, or pace (CPP) in her assessment of his RFC, and instead found he could perform work that could be learned in 30 days or less that involved simple, routine tasks. Jason contends such a limitation to unskilled work addressed only the complexity of the tasks he could learn and not his moderately impaired ability to perform those tasks in a manner that competitive employment demands. He says the ALJ failed to explain how, given the evidence of his anxiety and frustration, he could perform even the simple tasks of an unskilled occupation with the requisite persistence and pace employers demanded. The Commissioner counters that, based on the record, the ALJ reasonably concluded that a limitation to simple, routine work that could be learned within 30 days or less would sufficiently address Jason's anxiety and depression. The Commissioner presses the Court to reject Jason's invitation to insert categorical rules that certain restrictions in an RFC assessment could never account for moderate limitations in CPP.

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). The hypothetical must therefore "explicitly account for" deficiencies in concentration, persistence, or pace. *DeCamp v. Berryhill*, 916 F.3d 671, 975 (7th Cir. 2019). The Commissioner is correct that there is no categorical rule in the Seventh Circuit that a limitation to unskilled, simple, repetitive tasks can never account for moderate limitations in

8

CPP. However, as the Commissioner recognizes, the Seventh Circuit's case law on this issue illustrates that the question of whether a RFC and hypothetical adequately account for a claimant's limitations in CPP is dependent upon the unique facts of each case. *See*, *e.g.*, *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (distinguishing Jozefyk's case from others in which the Seventh Circuit rejected that limitation to simple, routine tasks and limited interactions with others was adequate to account for temperamental deficiencies and limitations in CPP).

Given the unique facts of this case, the ALJ's assessment of Jason's mental RFC precludes a finding that the mental RFC and the hypothetical to the VE adequately accounted for Jason's moderate limitation in CPP. At Step Three, the ALJ addressed Jason's mental impairments of depression and anxiety. She first noted that "the claimant apparently has not believed that his mental impairments were severe until recently; the claimant was not treated by a mental health professional until March 2017, within one month of the date of the hearing." AR 30. The ALJ continued to apply the "special technique" found in 20 C.F.R. § 404.1520a which required the ALJ to determine the level of severity of limitation that Jason's mental impairment produced in four broad functional areas including CPP.

The ALJ found that Jason had moderate limitation in CPP. In support of that finding, she explained he was able to concentrate and persist as well as maintain pace well enough to attend to his own financial affairs, attend medical appointments, and shop in stores and by computer. The ALJ went on, "He has difficulty, during periods of symptom exacerbation, concentrating and maintaining pace when attempting complex or highly intellectual activities, and he is moderately limited in this area of functioning." AR 30-31. Later, the ALJ detailed Jason's mental RFC as confined to "work that can be learned in 30 days or less, with simple and routine tasks." AR 31. In her discussion of the evidence

9

at Step Four, the ALJ provided, "Depression and anxiety limits [Jason's] ability to perform complex and highly intellectual work in [sic] his limited to jobs where tasks can be learned in 30 days or less and to jobs with simple routine tasks." AR 33. The above was the sum total discussion of the evidence and reasoning in support of Jason's limitation to work that could be learned in 30 days or less involving only simple routine tasks.

A court must be able to trace the path of the ALJ's reasoning by way of the ALJ's sufficient articulation of the evidence "to assure [the court] that the ALJ considered the important evidence." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). The Court is unable to do so here to the extent the ALJ found that Jason had difficulty with concentrating and maintaining pace only during periods of symptom exacerbation. Why only during periods of symptom exacerbation? The ALJ does not explain. Why only when attempting complex or highly intellectual activities? Again, the ALJ does not explain. The ALJ's later finding that depression and anxiety limited Jason's ability to perform complex and highly intellectual work does not remedy the earlier lack of explanation. Instead, that finding read together with the ALJ's previous finding presents an additional question: Did the ALJ equate depression and anxiety to "symptom exacerbation"? If she did so, the Court is left wonder whether the ALJ's mental RFC really did account for Jason's moderate limitations in CPP. The Commissioner argues the ALJ explained how the evidence supported Jason's mental RFC assessment, and in support of that argument the Commissioner points out the ALJ noted Jason sought very little mental health treatment. The fact that evidence of Jason's mental impairments was sparse did not do away with the ALJ's duty to sufficiently account for Jason's moderate limitations in CPP which the ALJ clearly determined he had from that "sparse" evidence. Without any explanation as to how and why the ALJ determined Jason was moderately limited only in attempting complex or highly

10

intellectual work, the finding that his moderate limitation in CPP was accounted for by limitation to work that could be learned in 30 days or less with simple, routine tasks was not sufficiently explained in the Decision.

The Court therefore agrees with Jason that the limitation to work that could be learned in 30 days or less with simple, routine tasks addressed only the complexity[2] of the tasks Jason could learn and not his moderate limitation in CPP in the performance of those tasks. Simply put, the ALJ failed to build a "logical bridge" from the evidence to her conclusion that Jason's moderate limitation in CPP was accounted for by limitation to work that could be learned in 30 days or less involving only simple and routine tasks. *See Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017) (explaining the Commissioner's decision must be affirmed as long as the Appeals Council identified supporting evidence in the record and built a logical bridge from that evidence to its conclusion). The error is not harmless where the VE testified that an individual who was off-task for greater than 20 percent of the workday would be precluded from competitive employment.

## 2

Jason further argues with regard to his mental RFC that the ALJ erred in failing to explain why she did not include limitations in social interaction in her assessment of Jason's RFC. In her Decision, the ALJ found Jason had no limitation in interacting with others and in support of that finding the ALJ pointed out: Jason related well to his relatives as well as friends; he had not become socially isolated due to mental distress; he was able to interact appropriately with those that he encountered during the day, such as when shopping, visiting a gymnasium, or

---

[2] The VE himself said the hypothetical individual the ALJ presented was one limited to "*unskilled* simple routine" work. AR 89 (emphasis added).

attending medical appointments; he did not engage in socially disruptive behavior; and he was able to interact appropriately with others. AR 30.

Jason contends 20 C.F.R. § 404.1520a provides that the special technique in the evaluation of mental impairments is designed to assist an ALJ in determining where the ALJ lacks sufficient evidence upon which she is able to ascertain the severity of limitations that a claimant's mental impairments produce. 20 C.F.R. § 404.1520a(a)(1) states, in part: "Using the technique helps us: (1) Identify the need for additional evidence to determine impairment severity." Jason faults the ALJ for failing to obtain a professional assessment of how his mental impairments impacted his ability to work before she applied the special technique. He faults the ALJ further for failing to explain how she considered evidence of his anger and agitation and for failing to explain why such anger and agitation would not affect his behavior in the workplace. Jason points to records wherein treatment providers observed he was "angry," "frustrated", "hostile," and he became agitated." Plf's MSJ (Doc. 13 at pg. 11). The Commissioner disputes the ALJ erred in her application of the special technique where she outlined the broad functional areas, defined the terms "marked" and "extreme," and then cited the evidence supporting her determination. He argues Jason failed to put forth sufficient evidence that his anger and frustration were socially disruptive and warranted social restrictions as was his burden.

In her Decision, the ALJ noted, "[N]o State agency psychological consultant concluded that a mental listing is medically equaled (1A and 3A)." AR 31. In his brief, the Commissioner argues in support of his position that the ALJ reasonably assessed Jason's anxiety and depression that "[n]one of the healthcare professionals who addressed Plaintiff's mental health symptoms opined to greater functional limitations." Dft's MSA (Doc. 16 at pg 6). Glaringly apparent to the Court is the fact that *no* psychological consultant reviewed Jason's mental health

12

records because they post-dated the State Agency medical doctors' review of his claim dated February 10, 2015 and September 1, 2015. It was misleading, to say the least, for the ALJ to comment that no State Agency psychological consultant concluded that a mental listing was medically equaled; that suggested state agency psychological consultant review actually occurred. Also, the Commissioner's contention that none of the healthcare professionals who addressed Jason's mental health symptoms opined to greater functional limitations attempts to blur the reality of the record. With regard to Jason's mental impairments, the record contains treatment notes and assessments which do not amount to "medical opinions" as those are defined in the relevant regulations. *See* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"). No mental health professional reviewed Jason's mental health records to which Jason cites in his brief.

True, the claimant bears the burden of proving disability, but the ALJ has an independent duty to develop a full and fair record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). The Social Security Administration clearly contemplates that application of the special technique will alert an ALJ to the need for additional evidence to determine impairment severity. ALJs are not permitted to play doctor or reach their own independent medical conclusions. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (faulting the ALJ for impermissibly playing doctor and reaching his own independent medical conclusion). It is of no moment that Jason, per the ALJ, "apparently [did not] believe that his mental impairments were severe until" shortly before the ALJ issued her Decision in August 2017 or that the records to which Jason cites in his brief, per the Commissioner, included a span of just five

months from October 2016 to April 2017. AR 30. The fact that the ALJ did not subject the medical evidence pertaining to Jason's mental health to medical scrutiny in a case in which she determined his anxiety and depression were severe impairments is fatal error. The Court cannot ignore the possibility that the ALJ indeed played doctor in her review of Jason's mental health evidence. Jason correctly points out that the ALJ cited only non-medical evidence in her application of the special technique. An RFC assessment, however, "must include a narrative discussion describing how the evidence supports each conclusion, *citing specific medical facts* (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p (emphasis added); *see also Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("In assessing the claimant's RFC, the ALJ must consider *both the medical and nonmedical evidence* in the record") (emphasis added). Certainly, the final responsibility for deciding a claimant's RFC is reserved to the Commissioner. However, as Jason suggests, the Commissioner's argument attempts to impermissibly shift the burden to Jason to explain to the ALJ how his anxiety, anger, and frustration limited his ability to interact socially. The errors the ALJ committed as discussed, *supra*, preclude the Court from finding that substantial evidence supports the ALJ's mental RFC finding. Remand is warranted.

## B

The Court accordingly does not address the parties' remaining arguments as to Jason's physical RFC and the evaluation of his subjective allegations.

## V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 12) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 15) be denied; and 3) this case be remanded to the

Commissioner of Social Security for further proceedings consistent with this Report & Recommendation pursuant to 42 U.S.C. §405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on November 12, 2019.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE